UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TOTO, INC.,                                          :

                    Plaintiff,              :          12 Civ. 1434 (LAK) (AJP)

      -against-                                  :          **REPORT AND RECOMMENDATION**

SONY MUSIC ENTERTAINMENT,                 :

                 Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

          Plaintiff Toto, Inc. brings this action against defendant Sony Music Entertainment based on a dispute over the amount of royalties owed under the parties' recording contract. (Dkt. No. 20: Am. Compl. ¶¶ 6-11, 80-90.) Presently before the Court is Sony's motion to dismiss Toto's amended complaint. (Dkt. No. 21: Notice of Motion.)[1/] For the reasons set forth below, Sony's motion should be GRANTED in part and DENIED in part.

<u>FACTS</u>

          The primary issue in this action is "Toto's assertion that royalties with respect to music distributed through what Toto calls Download and Mastertone Providers (such as iTunes, eMusic, amazon.com, and Verizon Wireless) should have been paid under a clause governing

---

[1/]     Toto voluntarily withdrew its accounting and declaratory judgment claims (the third and fourth causes of action, Am. Compl. ¶¶ 91-99) during the October 12, 2012 conference (Dkt. No. 39: 10/12/12 Conf. Tr. 14). Accordingly, only the first and second causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing (Am. Compl. ¶¶ 80-90) remain at issue.

royalties with respect to master recordings leased to others." Toto, Inc. v. Sony Music Entm't, 12 Civ. 1434, 2012 WL 1416884 at *1 (S.D.N.Y. Apr. 23, 2012) (Kaplan, D.J.).   This "digital downloads" claim, which Judge Kaplan addressed on the merits in an Order denying Sony's motion to dismiss Toto's original complaint with respect to the breach of contract claim, id. at *2-3, arises out of the royalty accountings rendered from January 1, 2005 through June 30, 2008, which were audited by Toto in 2010 (the "Audit Priod"), as well as the royalty accountings rendered after the audit period and continuing to date (the "Post-Audit Period").   (See page 6 below.)

**Procedural History**

Toto commenced this action on February 27, 2012 asserting claims for breach of contract, breach of the duty of good faith and fair dealing, an accounting, and declaratory judgment. (Dkt. No. 1: Compl. ¶¶ 39-57.) On March 22, 2012, Sony moved to dismiss Toto's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the contract was clear and did not entitle Toto to relief. (Dkt. No. 3: 3/22/12 Notice of Motion; Dkt. No. 4: 3/22/12 Sony Br. at 7-17.) Judge Kaplan granted Sony's motion to dismiss only with respect to the claim for breach of the duty of good faith and fair dealing, and denied it in all other respects.   Toto, Inc. v. Sony Music Entm't, 12 Civ. 1434, 2012 WL 1416884 at *3 (S.D.N.Y. Apr. 23, 2012) (Kaplan, D.J.).

On May 22, 2012, Sony moved pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, seeking dismissal of all remaining causes of action.   (Dkt. No. 12: 5/22/12 Notice of Motion.)   Sony argued that Toto's breach of contract claim was time barred for those allegations relating to the Audit Period royalty accountings.   (Dkt. No. 14: 5/22/12 Sony Br. at 8-10.)   With

respect to the Post-Audit period, Sony argued that dismissal was warranted because Toto failed to state a plausible claim for relief.  (5/22/12 Sony Br. at 11-12.)

Toto sought, and was granted, leave to amend its complaint on May 24, 2012.  (Dkt. No. 23: Sperling Aff. Ex. C: 5/24/12 Tel. Conf. Tr. 4, 8-9.)  In granting leave to amend, Judge Kaplan stated that Toto's application was approved "with the understanding that this amended pleading is the last amended pleading."  (5/24/12 Tel. Conf. Tr. 8.)  In light of the then-forthcoming amended complaint, Judge Kaplan denied as moot Sony's motion for judgment on the pleadings. (Dkt. No. 15: 5/24/12 Memo Endorsed Order.)

Toto filed its amended complaint on June 11, 2012, asserting the same four causes of action alleged in its original complaint.  (Dkt. No. 20: Am. Compl. ¶¶ 80-99.)  Toto added factual allegations aimed at defeating the argument Sony raised in its motion for judgment on the pleadings that the Audit Period breach of contract claim was contractually time barred.  (Am. Compl. ¶¶ 13-54.)

On July 3, 2012, Sony moved to dismiss Toto's amended complaint in its entirety. (Dkt. No. 21: 7/3/12 Notice of Motion.)  During the October 12, 2012 conference before me, Toto's counsel withdrew the accounting and declaratory judgment claims.  (Dkt. No. 39: 10/12/12 Conf. Tr. 14.)  Sony argues that Toto's remaining claims should be dismissed on the following grounds: (a) the breach of contract claim is contractually time barred insofar as it is based on the Audit Period royalty accountings (Dkt. No. 22: Sony Br. at 14-25); (b) the breach of contract claim for the Post-Audit Period fails to state a plausible claim for relief (Sony Br. at 25-26); and (c) the breach of

implied covenant of good faith and fair dealing claim is duplicative of the breach of contract claim (Sony Br. at 28).

**The Parties' Contract**

The parties' relationship is governed by two agreements (collectively, the "Contract") entered into in 1977 and 1983.  (Dkt. No. 20: Am. Compl. ¶ 6; Dkt. No. 24: Moro Aff. Ex. A: 1977 Agreement; Moro Aff. Ex. B: 1983 Agreement.)  Pursuant to the Contract's terms, Sony is required to pay royalties to Toto in exchange for certain uses of Toto's musical recordings.  (Am. Compl. ¶¶ 7-8; Dkt. No. 22: Sony Br. at 3; Dkt. No. 26: Toto Opp. Br. at 3.)

The Contract provides that Sony will calculate the royalties due to Toto and issue royalty statements to Toto twice per year:

> [Sony] will compute royalties payable to you [i.e., Toto] hereunder as of June 30th and December 31st for each preceding six-month period during which Records as to which royalties are payable hereunder are sold, and will render a statement and pay such royalties, less any unrecouped Advances, prior to each succeeding September 30th and March 31st, respectively.

(Moro Aff. Ex. A: 1977 Agreement ¶ 11.01; accord Moro Aff. Ex. B: 1983 Agreement ¶ 11.01.) By these terms, the royalty statements Sony must issue to Toto are due each year on September 30 (for the January 1 to June 30 period) and March 31 (for the July 1 to December 31 period).  (Moro Aff. Exs. A & B: 1977 & 1983 Agreements ¶ 11.01.)

Upon Toto's receipt of a royalty statement, Toto is entitled to audit Sony's royalty calculations:

> At any time within eighteen (18) months after any royalty statement is due you [i.e., Toto] hereunder you shall have the right to give [Sony] written notice of your intention to examine [Sony's] books and records with respect to such statement. Such examination shall be commenced within thirty (30) days after the date of such

notice, at your sole cost and expense, by any certified public accountant or attorney designated by you provided he is not then engaged in an outstanding examination of [Sony's] books and records on behalf of a person other than you. Such examination shall be made during [Sony's] usual business hours at the place where [Sony] maintains the books and records which relate to you and which are necessary to verify the accuracy of the statement or statements specified in your notice to [Sony] and your examination shall be limited to the foregoing.

(Moro Aff. Ex. A: 1977 Agreement ¶ 11.03; see Moro Aff. Ex. B: 1983 Agreement ¶ 11.03.)[2]

In the absence of written notice from Toto of its intent to conduct an audit, the Contract dictates that "each royalty statement rendered to you shall be final, conclusive and binding on you and shall constitute an account stated." (Moro Aff. Exs. A & B: 1977 & 1983 Agreements ¶ 11.05.)

The Contract sets a three year limitations period for Toto to bring any action relating to royalty statement accountings:

You shall be foreclosed from maintaining any action, claim or proceeding against [Sony] in any forum or tribunal with respect to any statement or accounting due hereunder unless such action, claim or proceeding is commenced against [Sony] in a court of competent jurisdiction within three years after the due date of such statement or accounting.

(Moro Aff. Ex. A: 1977 Agreement ¶ 11.05; accord Moro Aff. Ex. B: 1983 Agreement ¶ 11.05.)[3]

---

[2]	The audit provision of the 1983 Agreement is identical to the 1977 Agreement except that the 1983 Agreement requires written notice of Toto's intent to audit within 24 months of the royalty statement's due date. (Moro Aff. Ex. B: 1983 Agreement ¶ 11.03.)

[3]	The 1983 Agreement also limits the scope of any action:

If you commence suit on any controversy or claim concerning royalty accountings rendered to you under this agreement, the scope of the proceeding will be limited to determination of the amount of the royalties due for the accounting periods concerned, and the court will have no authority to consider any other issues or award

(continued...)

**Toto's Audit**

On July 31, 2008, Toto sent a notice letter informing Sony that Toto had retained Haber Corporation to audit the royalty accountings rendered from January 1, 2005 through June 30, 2008 (the "Audit Period").  (Dkt. No. 20: Am. Compl. ¶ 17; Dkt. No. 24: Moro Aff. Ex. C: 7/31/08 Toto Letter to Sony; see also Dkt. No. 22: Sony Br. at 6; Dkt. No. 26: Toto Opp. Br. at 4.)[4/]  The letter stated:  "Haber Corporation will be contacting [Sony] in the near future to discuss a mutually convenient time to commence the examination."  (Moro Aff. Ex. C: 7/31/08 Toto Letter to Sony.)

Toto alleges that Haber attempted unsuccessfully to contact Sony several times between August 28 and October 17, 2008.  (Am. Compl. ¶¶ 18-22; see also Toto Opp. Br. at 4-5.)  Haber's first specific request to schedule the Toto audit field work was made on October 20, 2008.  (Am. Compl. ¶ 23.)  Thereafter, Haber and Sony discussed possible dates for the audit field work.

_____

[3/]        (...continued)
                any relief except recovery of any royalties found owing.  Your recovery of any such
                royalties will be the sole remedy available to you or the Artist by reason of any claim
                related to [Sony's] royalty accountings.

(Moro Aff. Ex. B: 1983 Agreement ¶ 11.05.)

[4/]        The Audit Period encompasses seven royalty statement periods:  (1) January 1 to June 30,
        2005; (2) July 1 to December 31, 2005; (3) January 1 to June 30, 2006; (4) July 1 to
        December 31, 2006; (5) January 1 to June 30, 2007; (6) July 1 to December 31, 2007; and
        (7) January 1 to June 30, 2008.  (See Sony Br. at 6 & Att. A: Bars to Recovery for Royalty
        Periods During Audit Period.)  Pursuant to the fixed royalty statement due dates set forth in
        the Contract, royalty statements for each of the seven subject periods were due on the
        following dates respectively: (1) September 30, 2005; (2) March 31, 2006; (3) September 30,
        2006; (4) March 31, 2007; (5) September 30, 2007; (6) March 31, 2008; and
        (7) September 30, 2008.  (See page 4 above; see also Moro Aff. Exs. A & B: 1977 & 1983
        Agreements ¶ 11.01; Sony Br. Att. A: Bars to Recovery for Royalty Periods During Audit
        Period.)

(Am. Compl. ¶¶ 24-27.)  Sony offered Haber four weeks, one each in January, February, March and April 2009.  (Am. Compl. ¶ 27; Moro Aff. Ex. E: 11/6/08 Sony Email.)  Haber selected the April 2009 date.  (Am. Compl. ¶ 28.)  In a November 13, 2008 email confirming the scheduled field work, Haber requested a tolling agreement, stating:  "Because of the date of the examination and the period allowed to bring suit per the agreement I need to request a tolling agreement that would run through the end of our settlement negotiations."  (Moro Aff. Ex. F: 11/13/08 Haber Email; see also Am. Compl. ¶ 28.)  Sony declined to enter into the requested tolling agreement.  (Sony Br. at 9.)

After completing the audit field work in April 2009, Toto alleges that Haber attempted unsuccessfully to obtain additional documents from Sony in September 2009 and January 2010.  (Am. Compl. ¶¶ 28-30; but see id. ¶ 56: "Eventually, backup documentation regarding these adjustments was provided.")  On March 16, 2010, Toto "provided Sony with those results of the Audit able to be determined in light of Sony's refusal to provide all documents and information."  (Am. Compl. ¶ 33; Moro Aff. Ex. H: 3/16/10 Haber Letter.)  According to Toto, the "results of the Audit able to be determined" as of March 2010 revealed "breaches" in the form of underpayments in all seven royalty statement periods.  (Am. Compl. ¶¶ 33, 55-79; see also Toto Opp. Br. at 6.)

**Sony's Response to Toto's Audit**

Toto alleges that on August 10, 2010, "Sony responded to the Audit by falsely claiming it had overpaid Toto $189,661 during the period in question" and "issued what were, in effect, new royalty statements . . . in the form of Excel spreadsheets that covered every royalty period beginning on January 1, 2006 and running through June 30, 2008."  (Dkt. No. 20: Am. Compl. ¶¶ 35-36; Dkt. No. 24: Moro Aff. Ex. T: 8/10/10 Sony Letter to Haber.)  Toto alleges that

"[t]he new royalty statements contained new data and calculations more favorable to Sony," and that "Toto had never previously had an opportunity to object or audit these new calculations." (Am. Compl. ¶ 40; see also id. ¶¶ 38-39, 41-43.)

## Continuing Discussions Regarding The Audited Royalty Statement Accountings

Haber and Sony had a number of exchanges following Sony's August 10, 2010 response, including purported settlement discussions. (Dkt. No. 20: Am. Compl. ¶¶ 44-50; Dkt. No. 24: Moro Aff. Ex. FF: 8/11/11 Haber Email to Sony; Moro Aff. Ex. GG: 10/7/11 Sony Email to Haber.) In August 2011, Haber, on Toto's behalf, again requested that Sony enter into a tolling agreement. (Moro Aff. Ex. FF: 8/11/11 Haber Email to Sony: "Toto is concerned about how long it is taking to get through their settlement and would like to get a tolling agreement through 12/31/11.") Sony declined the request, but eventually agreed to a prospective tolling agreement on October 7, 2011, containing the following reservation: "[T]his tolling agreement is without prejudice to any and all claims, defenses or objections either party may have to the running or expiration of all applicable statutory or contractual limitations periods prior to today's date." (Moro Aff. Ex. GG: 10/7/11 Sony Email; see also Dkt. No. 22: Sony Br. at 12.)

Toto alleges that on December 11, 2011, Sony sent new royalty statements for three royalty accounting periods within the Audit Period. (Am. Compl. ¶¶ 51-54; see Moro Aff. Ex. HH.) According to the correspondence referred to in the complaint, however, the materials sent in December 2011 apparently were corrected summary pages. On December 7, 2011, Haber wrote:

> 2. Sony will provide new period ending 6/30/08 royalty statements in PDF format for all of Toto's accounts. . . . As far as claims 2, 3, and 4 Sony believes I may have the preliminary royalty statements with wrong balances. If this does not resolve the problem we will discuss early next week.

(Moro Aff. Ex. HH: 12/7/11 Haber Email.)  Sony responded the following day:

> With respect to item #2 of your email, as discussed, I will be providing royalty statements for all of Toto's accounts for the periods ending 12/31/2005, 6/30/2006, and 12/31/2006.  These statements appear to be the source of our discrepancies for claims 2-5.  <u>The statements that I will be providing are not new royalty statements; they have all of the same statement detail that was reported to Artist.  The only difference is the summary pages (i.e. the first few pages)</u>.  As previously stated, the topside summary statement pages that accompanied the original statements were sent in error.  Once you receive the statements from me, please compare the summary pages of the statement with the detail pages of the statement to confirm that they tie.

(Moro Aff. Ex. HH: 12/8/11 Sony Email, emphasis added.)

## ANALYSIS

## I.   THE STANDARDS GOVERNING A MOTION TO DISMISS

### A.   The Twombly-Iqbal "Plausibility" Standard

In two decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in <u>Twombly</u>, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it <u>demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."</u>  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")).[5]

---

[5]    Accord, e.g., Cancel v. Home Depot, No. 11-3995-CV, 2012 WL 5870764 at *1 (2d Cir. Nov. 21, 2012); Spataro v. Glenwood Supply, 479 F. App'x 403, 404 (2d Cir. 2012); Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010), cert. denied, 131 S. Ct. 901 (2011); Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc., 10 Civ. 2737, --- F. Supp. 2d ----, 2012 WL 4714799 at *5 (S.D.N.Y. Sept. 7, 2012) (Kaplan, D.J.); Jones v. N.Y. Dep't of Corr. (DOC) Jail, 11 Civ. 4477, 2011 WL 5865143 at *1-2 (S.D.N.Y. Nov. 22, 2011) (Peck, M.J.), report & rec.
(continued...)

Even after <u>Twombly</u> and <u>Iqbal</u>, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Bison Capital Corp.</u> v. <u>ATP Oil & Gas Corp.</u>, 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), <u>report & rec. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[6/]

## B.    Consideration Of Documents Attached To Or Referred To In The Amended Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." <u>Vassilatos</u> v. <u>Ceram Tech Int'l, Ltd.</u>, 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[7/]   The Court,

---

[5/]      (...continued)
<u>adopted</u>, 2012 WL 1232963 (S.D.N.Y. Apr. 12, 2012); <u>Lindner</u> v. <u>IBM Corp.</u>, 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); <u>Joseph</u> v. <u>Terrence Cardinal Cooke Health Care Ctr.</u>, 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); <u>Elektra Entm't Grp., Inc.</u> v. <u>Barker</u>, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); <u>Edison Fund</u> v. <u>Cogent Inv. Strategies Fund, Ltd.</u>, 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); <u>Diana Allen Life Ins. Trust</u> v. <u>BP P.L.C.</u>, 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

[6/]      <u>Accord</u>, <u>e.g.</u>, <u>Tasini</u> v. <u>AOL, Inc.</u>, 851 F. Supp. 2d 734, 737 (S.D.N.Y. 2012) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"); <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).

[7/]      <u>Accord</u>, <u>e.g.</u>, <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss
(continued...)

however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[8]

---

[7]    (...continued)
pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

[8]    See also, e.g., Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); In re Lehman Bros. Sec. & ERISA Litig., 09 MD 2017, 2012 WL 4866504 at *4 (S.D.N.Y. Oct. 15, 2012) (Kaplan, D.J.) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98); Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012) ("On a motion to dismiss, a court is not limited to the four corners of the complaint.  A court may also consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" (quoting Brass v. Am. Film Techs., Inc., 987 F.2d at 150));
(continued...)

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d at 134 (citations omitted).  In this case, documents to which Toto referred in its amended complaint and which the parties attached to their motion papers (Dkt. Nos. 21-27) may be considered on the motion to dismiss, subject to the Faulkner v. Beer proviso.  See, e.g., Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 2012 WL 423350 at *2-3 (considering recording contracts, royalty statements and correspondence on motion to dismiss).

## II.  TOTO'S FIRST CAUSE OF ACTION BASED ON ROYALTY ACCOUNTINGS FOR THE AUDIT PERIOD SHOULD BE DISMISSED AS CONTRACTUALLY TIME BARRED

"Under New York law, parties to a contract may designate a reasonable period of limitations within which a claim arising out of the contract is to be commenced, even if that period is shorter than the statutory period." N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 477 F. Supp. 2d 576, 582 (S.D.N.Y. 2006).[9/] "Failure to comply with a contractual limitations

---

[8/]      (...continued)
Maniolos v. United States, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), aff'd, 469 F. App'x 56 (2d Cir. 2012).

[9/]      Accord, e.g., Epstein v. Hartford Life & Accident Ins. Co., 449 F. App'x 46, 47 (2d Cir. 2011); Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009); Friedmann v. Raymour Furniture Co., No. CV 12-1307, 2012 WL 4976124 at *3 (E.D.N.Y. Oct. 16, 2012); Drum Major Music Entm't Inc. v. Young Money Entm't,
(continued...)

period will subject the action to dismissal, absent proof that the limitations provision was obtained

through fraud, duress, or other wrongdoing."  <u>Allman</u> v. <u>UMG Recordings</u>, 530 F. Supp. 2d at 606

(& cases cited therein).[10/]

        Toto and Sony agreed that the prescriptive period with respect to any claim relating

to a royalty accounting would be three years from either September 30 or March 31, the fixed due

dates of the royalty statements as set forth in the Contract.[11/]  Thus, on a facial application of this

limitations period (disregarding for the moment the possible bases for exception discussed below),

Toto's claims relating to the Audit Period royalty accountings became time barred, respectively, on

the following dates:  (1) September 30, 2008; (2) March 31, 2009; (3) September 30, 2009;

(4) March 31, 2010; (5) September 30, 2010; (6) March 31, 2011; and (7) September 30, 2011.  (<u>See</u>

---

[9/]      (...continued)
       <u>LLC</u>, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); <u>Allman</u> v. <u>UMG</u>
       <u>Recordings</u>, 530 F. Supp. 2d 602, 606 (S.D.N.Y. 2008).

[10/]     <u>Accord</u>, <u>e.g.</u>, <u>Infectious Disease Solutions, P.C.</u> v. <u>Synamed, LLC</u>, No. 07-CV-5423, 2012
       WL 1106847 at *9 (E.D.N.Y. Mar. 30, 2012); <u>Drum Major Music Entm't Inc.</u> v. <u>Young</u>
       <u>Money Entm't, LLC</u>, 2012 WL 423350 at *2; <u>Watson</u> v. <u>Riptide Worldwide, Inc.</u>, 11 Civ.
       0874, 2012 WL 383946 at *5 (S.D.N.Y. Feb. 7, 2012) ("Courts will enforce a contractually
       shortened limitations period so long as it is reasonable and not against public policy or
       obtained through fraud, duress, or wrongdoing.").

[11/]     The contractual limitation contained in the parties' Contract clearly prohibits Toto from
       bringing any action with respect to any royalty statements or accountings due under the
       Contract "unless such action, claim or proceeding is commenced against [Sony] in a court
       of competent jurisdiction within three years after the due date of such statement or
       accounting."  (<u>See</u> page 5 above.)  The Contract further defines the "due date of such
       statement" as either September 30, for periods running from January 1 to June 30, or March
       31, for periods running from July 1 to December 31 of the prior year.  (<u>See</u> page 4 above.)

pages 5-6 & n.4 above; see also Dkt. No. 22: Sony Br. Att. A: Bars to Recovery for Royalty Periods During Audit Period.)[12/]

Toto initiated this action on February 27, 2012.  (Dkt. No. 1: Compl.)  Accordingly, Toto's first cause of action, insofar as it seeks recovery for the periods ending June 30, 2008 and earlier (i.e., the Audit Period) is time barred by the contractual limitations period, unless Toto's amended complaint sufficiently alleges an applicable exception to the provision.  See, e.g., Allman v. UMG Recordings, 530 F. Supp. 2d at 607 ("Plaintiffs failed to bring a timely action under the Limitation Provision with respect to [royalty] Statements 1, 2, 3, and 4, and unless an exception applies, the 1985 Agreement serves as a complete bar to Plaintiffs' claims regarding those statements.").

### A.    Claims Based On The Audit Period Are Contractually Time Barred And The Alleged "In Effect, New Statements" Did Not Restart The Clock With Respect To The Audit Period

In opposition to Sony's enforcement of the contractual limitations period, Toto argues that its Audit Period claims are not time barred because Sony twice issued new royalty statements

---

[12/]    Such contract-based time bars are routinely upheld and enforced by courts in this District. See, e.g., Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 2012 WL 423350 at *2-3; Malmsteen v. Universal Music Grp., Inc., 10 Civ. 3955, 2012 WL 2159281 at *7-8 (S.D.N.Y. June 14, 2012) ("The Contract stipulates that those due dates are 'on or before September 30 for the period ending the preceding June 30, and on or before March 31 for the period ending the preceding December 31.' . . . Courts routinely enforce contractual limitations and objection provisions, and [plaintiff] freely entered into those at issue here; he does not claim that the Agreement was the product of fraud or duress."); Allman v. UMG Recordings, 530 F. Supp. 2d at 607; Franconero v. Universal Music Corp., 02 Civ. 1963, 2003 WL 22990060 at *4 (S.D.N.Y. Dec. 19, 2003).

for those periods, necessarily restarting the limitations clock.  (See Dkt. No. 20: Am. Compl. ¶¶ 36-

43, 51-54, 84; see also Dkt. No. 26: Toto Opp. Br. at 5-6, 8-13.)

> First, Toto alleges that new royalty statements were issued in August 2010:

> > On August 10, 2010, Sony also issued what were, in effect, new royalty statements.  These new royalty statements were in the form of Excel spreadsheets that covered every royalty period beginning on January 1, 2006 and running through June 30, 2008.

> > . . . .

> > . . . Because Sony issued these new royalty statements, the time period for Toto to object to Sony's accounting and payment for these statement periods was restarted on August 10, 2010.  It is inherently unfair, inequitable, and unlawful for Sony to attempt to deny Toto the right to challenge these royalty statements due to contractual or statutory limitations, while Sony at the same time makes adjustments to these royalty statements.   The new royalty statements were not part of 'negotiations,' as asserted by Sony's counsel during a call with this Court, but completely new statements that recalculated all royalties and unilaterally changed matters not raised by Toto in the Audit.

(Am. Compl. ¶¶ 36, 43.)

> Second, Toto alleges that new royalty statements were issued in December 2011:

> > Because Sony issued new royalty statements for the periods ending December 31, 2005, June 30, 2006, and December 31, 2006 on December 11, 2011, Toto's right to object to and challenge those royalty statements began on December 11, 2011, the date of the issuance of the royalty statements.  Toto had never previously seen these royalty calculations and accountings.  Therefore, Toto had never had the opportunity to challenge this accounting.  It is unfair, inequitable and unlawful for Sony to make unilateral changes to royalty accountings and then attempt to deprive Toto of the opportunity to object to and challenge those new royalty statements.

(Am. Compl. ¶ 54.)

> As an initial matter, the allegations and documents referred to in the amended

complaint do not support Toto's claim that either the August 2010 or December 2011 documentation

constituted new royalty statements.  (Compare, e.g., Dkt. No. 24: Moro Aff. ¶ 14 & Ex. EE: Royalty Statement for 7/1/2007-12/31/2007, with Moro Aff. ¶ 12 & Exs. U-CC: Sony's 8/10/10 Audit Response Claim Schedules.)  Nowhere in its pleading does Toto allege that the newly calculated royalties reported in Sony's August 10, 2010 "in effect, new royalty statements" were ever actually applied to the royalty accounts at issue.  (See generally Am. Compl.; see also id. ¶ 43: "Sony [was] recalculating for its own benefit the way it would account and pay Toto," emphasis added.)  Rather, Toto's allegations show only that it audited the royalty accountings and provided its findings to Sony, and that Sony also reviewed those royalty accountings and Toto's claims and provided its response to Toto.  (See Am. Compl. ¶¶ 33-43; see also Moro Aff. ¶ 10 & Exs. I-S: Toto's 3/16/10 Audit Claim Schedules; Moro Aff. ¶ 12 & Exs. U-CC: Sony's 8/10/10 Audit Response Claim Schedules.)  Similarly, Toto does not allege that the "new" summary pages provided in December 2011 changed Sony's royalty accountings to Toto in any way that was actually applied to the accounts.  (See Am. Compl. ¶¶ 51-54; Moro Aff. ¶ 17 & Ex. HH: 12/9/11 Sony Email; Moro Aff. ¶ 18 & Exs. II-KK: 12/11/11 Topside Summary Statements; Dkt. No. 22: Sony Br. at 13.)[13]

Were Sony to retroactively charge Toto for any of the newly calculated amounts reported in the "in effect, new royalty statements," that would appear in the actual royalty statement

---

[13]     This plain reading of the amended complaint's allegations is not contradicted by Toto's October 25, 2012 letter to the Court, arguing that "Sony has raised the $140,000 alleged overpayment to Toto already during the course of the audit."  (10/25/12 Busch Letter at 3.)  Toto misses the point: If Toto wished to bring an action based on Sony's royalty statements for the Audit Period, it was required to do so within three years of the royalty statements' due dates.  Had Toto timely commenced its action for alleged underpayment of royalties, Sony's claim of a $140,000 overpayment might have been resolved in connection with such an action to recover the accurate amount of royalties owed.

for the period in which the charge was applied, and Toto's three year limitation period would run

from the contractual due date of that statement; as Sony's counsel explained:

> [W]e haven't asserted a claim for that money . . . . We have never said that [Toto]
> can't challenge it.  If we actually take the step of claiming back that $140,000, then
> that will be a change to their royalty accounting in the period in which I do it, and
> the clock will begin to run from then on their period to challenge royalty accountings
> from that period.  We have never said that they can't challenge it and we haven't
> made the change.

(Dkt. No. 39: 10/12/12 Conf. Tr. 25; accord Sony Br. at 25 ("[A]ny retroactive alteration of Toto's

royalty accounting necessarily would be reflected in the semi-annual royalty statement next issued

thereafter, and Toto would have three years in which to bring claims concerning that accounting.");

see also Sony Br. at 11.)[14/]

Moreover, the auditing process described in Toto's pleading supports that the

documents exchanged between Sony and Toto were an implicit part of the standard industry audit

procedures, not new royalty statements:

> Implicit in the Recording Agreements is that Sony will allow a timely and complete
> audit, including responses by Sony and subsequent negotiations over the matters
> raised by an artist before a lawsuit is filed.  This is the industry custom and practice,
> as complex accounting systems make it virtually impossible for artists to assert their
> rights without a complete audit process.

(Am. Compl. ¶ 89, emphasis added.)  Further, it is not plausible that Toto ever believed the August

2010 documents were new royalty statements that restarted the limitations period, since Toto

requested a tolling agreement from Sony even after Toto had the August 2010 "in effect, new royalty

---

[14/]   Sony's explanation is not a novel one.  Cf., e.g., Franconero v. Universal Music Corp., 02
Civ. 1963, 2002 WL 31682648 at *1 (S.D.N.Y. Nov. 27, 2002) ("Defendant concedes that
Plaintiff is entitled to the back-up documentation for those belatedly reported items . . . ."),
report & rec. adopted, 2003 WL 22990060 (S.D.N.Y. Dec. 19, 2003).

statements."[15/]  See, e.g., Theisen v. Maple Grove, 41 F. Supp. 2d 932, 935 (D. Minn. 1999) ("It is

fair to assume that if [defendant] had indeed told plaintiffs that August 28, 1997, would serve as the

date of their claim plaintiffs would have related this information to their counsel, who would not

have then requested a tolling agreement." (emphasis added)).[16/]

      Even assuming arguendo that either the August 2010 or December 2011

documentation (or both) contained new royalty statements for the Audit Period, as a matter of law,

they nevertheless would not restart the limitations period.  Toto's argument to the contrary is belied

by the plain language of the Contract, which unambiguously establishes two fixed due dates for the

royalty statements from which the limitations periods run.  (Moro Aff. Exs. A & B: 1977 & 1983

Agreements ¶¶ 11.01, 11.05; see pages 4-5 above.)  At least two courts in this District have enforced

comparable fixed-due-date language to preclude time barred royalty suits even where those plaintiffs

had not received any royalty statements at all prior to the expiration of the limitations period.

Malmsteen v. Universal Music Grp., Inc., 10 Civ. 3955, 2012 WL 2159281 at *8 (S.D.N.Y. June

14, 2012); Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 2012 WL 423350 at *2

(contractual limitations period runs from statement's fixed due date, not from when statement is

actually rendered).  Thus, a purportedly new statement rendered in August 2010 or December 2011

---

[15/]    See Moro Aff. Ex. FF: 8/11/11 Haber Email ("Toto is concerned about how long it is taking to get through their settlement and would like to get a tolling agreement through 12/31/11.").

[16/]    Cf., e.g., Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012) (Plaintiff's "attorneys at the time clearly recognized this, for they [] dispatched [two letters to defendants]. . . . While these letters might reasonably be construed as requests for assurance, they cannot be construed as commencing suit.  This does not help" plaintiff.).

would not revive an expired claim since, by the Contract's terms, the limitations period runs from the fixed due date established for each royalty statement period, and this is true regardless of when (or whether) the statement is actually issued.

Accordingly, Toto's argument that the August 2010 and December 2011 documentation restarts the time limitation because "Toto had never had the opportunity to challenge this accounting" (Am. Compl. ¶ 54), is unavailing.  See Malmsteen v. Universal Music Grp., Inc., 2012 WL 2159281 at *8 (Plaintiff's "claim that this works an inequitable result is unpersuasive. Courts routinely enforce contractual limitations and objection provisions, and [plaintiff] freely entered into those at issue here; he does not claim that the Agreement was the product of fraud or duress."); Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 2012 WL 423350 at *2 ("The parties agreed that [plaintiff] would be barred from suit apropos royalty accounting and/or payments unless he brought suit 'within one (1) years [sic] from the date such statement of accounting for royalties or such payment was due.' . . . [Plaintiff] does not allege fraud, duress, or wrongdoing, but instead counters as follows: 'To request that a lawsuit be filed without ever knowing if a claim exists is a rather novel argument.  The facts of this case indicate that the defendants would systematically and knowingly forward royalty statements extremely late and over one year after they were actually "due".  Hence, the plaintiff's contractual right to audit and sue would be extinguished or almost extinguished before the statement was ever received.'  This argument is unavailing."  (citation omitted)).

**B.**     **Toto Fails To Sufficiently Plead The Elements Of Equitable Estoppel**

"Equitable estoppel arises if (i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to her detriment." Riddle v. Citigroup, 449 F. App'x 66, 69 (2d Cir. 2011) (quotations & alterations omitted).[17/]   "Under 'extraordinary circumstances,' a plaintiff may equitably estop a defendant from asserting a time limitation defense." Allman v. UMG Recordings, 530 F. Supp. 2d at 608.[18/]

"Equitable estoppel has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985); accord, e.g., Grosz v. Museum of Modern Art, 403 F. App'x 575, 577-78 (2d Cir. 2010), cert. denied, 132 S. Ct. 102 (2011); Kavowras v. N.Y. Times Co., 328 F.3d at 56;

---

[17/]     Accord, e.g., Kavowras v. N.Y. Times Co., 328 F.3d 50, 56 (2d Cir. 2003); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001); Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168, 176 (2d Cir. 2000); Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995); Jackson v. N.Y.S. Office of Mental Health, 11 Civ. 7832, 2012 WL 3457961 at *7 (S.D.N.Y. Aug. 13, 2012), report & rec. adopted, 2012 WL 5862741 (S.D.N.Y. Nov. 15, 2012); Ellul v. Congregation of Christian Bros., 09 Civ. 10590, 2011 WL 1085325 at *5 (S.D.N.Y. Mar. 23, 2011); Am. Auto. Ins. Co. v. Advest, Inc., 08 Civ. 6488, 2009 WL 3490060 at *4 (S.D.N.Y. Oct. 28, 2009) (Kaplan, D.J.); Allman v. UMG Recordings, 530 F. Supp. 2d 602, 608 (S.D.N.Y. 2008); Nagy v. Tee Vee Toons, Inc., 03 Civ. 7838, 2004 WL 1059512 at *1 (S.D.N.Y. May 12, 2004) (Kaplan, D.J.).

[18/]     Accord, e.g., RSI Corp. v. Int'l Bus. Machs. Corp., No. 5:08-cv-3414, 2012 WL 3277136 at *8 (N.D. Cal. Aug. 9, 2012) (applying New York law); Levy v. Aaron Faber, Inc., 148 F.R.D. 114, 119 (S.D.N.Y. 1993) (citing Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986)); see also, e.g., Nasso v. Bio Reference Labs., Inc., No. 11-CV-3480, --- F. Supp. 2d ----, 2012 WL 4336429 at *6 (E.D.N.Y. Sept. 24, 2012) ("Equitable estoppel is an extraordinary remedy." (quotations omitted)).

Overall v. Estate of Klotz, 52 F.3d 398, 404 (2d Cir. 1995) ("In order to invoke equitable estoppel, a plaintiff must show that the defendant 'wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct.'"); Dillman v. Combustion Eng'g, Inc., 784 F.2d at 61.[19]

Toto argues that Sony should be estopped from enforcing the Contract's limitations provision because: (1) Sony misrepresented that it was participating in a meaningful audit process when in fact it was purposefully delaying the audit; and (2) Sony's participation in settlement discussions led Toto to believe the claims would be settled, but ultimately they were not.  (Dkt. No. 20: Am. Compl. ¶¶ 16, 32, 44-50; Dkt. No. 26: Toto Opp. Br. at 13-17.)  Even accepting these facts as true, as the Court must on a motion to dismiss, Toto's allegations do not amount to a properly pled equitable estoppel defense.

---

[19] See also, e.g., RSI Corp. v. Int'l Bus. Machs. Corp., 2012 WL 3277136 at *8; Ellul v. Congregation of Christian Bros., 2011 WL 1085325 at *5 ("One example is where the defendant causes the late filing by falsely promising not to plead the statute of limitations as a defense."); Welenc v. PAL Envtl. Corp., 09 Civ. 8523, 2011 WL 1044486 at *3 (S.D.N.Y. Mar. 21, 2011); Jobim v. Songs of Universal, Inc., 732 F. Supp. 2d 407, 422 (S.D.N.Y. 2010); Bey v. I.B.E.W. Local Union No. 3, 05 Civ. 7910, 2008 WL 821862 at *12 n.12 (S.D.N.Y. Mar. 26, 2008), aff'd, 374 F. App'x 187 (2d Cir.), cert. denied, 131 S. Ct. 318 (2010); Allman v. UMG Recordings, 530 F. Supp. 2d at 608; Moultrie v. Potter, 04 Civ. 6887, 2006 WL 1495234 at *6 (S.D.N.Y. May 31, 2006); N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 477 F. Supp. 2d 576, 582 (S.D.N.Y. 2006); Enter. Eng'g, Inc. v. Hartford Fire Ins. Co., 04 Civ. 5018, 2004 WL 2997857 at *3 (S.D.N.Y. Dec. 23, 2004); Bendik v. Credit Suisse First Bos. (USA), Inc., 02 Civ. 9554, 2004 WL 736852 at *4 (S.D.N.Y. Apr. 5, 2004); Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 301 F. Supp. 2d 259, 263 (S.D.N.Y. 2004); Carter v. Goodman Grp. Music Publishers, 848 F. Supp. 438, 443-44 (S.D.N.Y. 1994).

### 1. Purposefully Delaying An Audit Is Not A Ground For Invoking Equitable Estoppel

Toto argues that "Sony's actions . . . extended Toto's audit out over multiple years even though Sony had a contractual obligation to allow Toto to conduct an audit within thirty (30) days of Toto providing Sony with an audit notice." (Dkt. No. 20: Am. Compl. ¶ 16.)  Specifically, Toto alleges delays stemming from Sony's purported failure to respond promptly to certain audit-related scheduling inquiries and failure to timely furnish all requested information Toto needed for its audit.  (Am. Compl. ¶¶ 17-31.)[20]  Neither allegation presents a basis for invoking equitable estoppel.  Indeed, a nearly identical argument was made and rejected by Judge Marrero in Allman v. UMG Recordings, an analogous case in this District:

> Plaintiffs have not alleged that UMG ever expressly assured them that it would forego the Time Provision defenses, and other than Plaintiffs' allegation that UMG permitted the audit to take place, Plaintiffs have not alleged any express promises or representations by UMG that would toll the Time Provisions.  In fact, UMG expressly refused to sign the tolling agreement proposed by Plaintiffs' letter dated June 19, 2006.  Even if Plaintiffs had no right under the Agreements to conduct the audit, it was unreasonable for Plaintiffs to rely on UMG's acquiescence to the audit as UMG foregoing its rights under the Time Provisions.  Accordingly, Plaintiffs were not reasonably lulled or misled by UMG allowing Plaintiffs to audit, but rather, it was "incumbent on [Plaintiffs] to take timely action to protect its rights."

---

[20]  With respect to the alleged failure to timely furnish all requested information, Toto admits that the bases for this action—Sony's alleged breaches—were known even without such information.  (See Am. Compl. ¶ 33: "On or about March 16, 2010, Toto provided Sony with those results of the Audit able to be determined in light of Sony's refusal to provide all documents and information.  The document submitted to Sony advised of the breaches found by" Toto.)  Accordingly, the allegation that Sony deliberately withheld certain information does not support Toto's argument for equitable estoppel.  See Ellul v. Congregation of Christian Bros., 09 Civ. 10590, 2011 WL 1085325 at *5 (S.D.N.Y. Mar. 23, 2011) ("Because the records withheld were not necessary to commence this lawsuit, Plaintiffs have alleged no facts to support a claim of equitable estoppel.").

Plaintiffs also assert, as part of their estoppel argument, that UMG delayed producing certain documents requested by Plaintiffs during the audit. The Court is not persuaded by Plaintiffs' argument. Even assuming that UMG purposely delayed producing documents and that this delay prolonged the audit, the fact that the audit took longer than it would have absent UMG's delay does not make Plaintiffs' reliance any more reasonable. To invoke equitable estoppel, Plaintiffs must have known of their potential cause of action but reasonably failed to initiate suit because UMG affirmatively misled or lulled them into delaying commencement of a legal action. The Audit Provision granted Plaintiffs a discretionary audit right, and they were not required to initiate or complete an audit prior to commencing a legal action. Plaintiffs have alleged nothing, including UMG's purported delay in disclosing particular documents, that reasonably would have induced Plaintiffs' reliance that UMG would forego its rights under the Time Provisions. UMG should not be equitably estopped from relying on the Time Provisions merely because Plaintiffs chose to commence a discretionary audit rather than a legal action.

Allman v. UMG Recordings, 530 F. Supp. 2d 602, 609-10 (S.D.N.Y. 2008) (citations omitted).

Likewise, a court in the Northern District of California recently relied on Allman v.

UMG Recordings to hold that equitable estoppel was not justified by allegations of a deliberately

delayed and misleading audit:

RSI argues here that IBM's provision of incorrect and incomplete audit information, as well as its delay in doing so, should estop IBM from invoking the contractual statute of limitations period. Allman also dealt with a statutory limitations provision in a contract, and plaintiffs there similarly contended that audit delays justified exercise of equitable estoppel as to the limitations provision. The court in Allman found that permitting an audit, and even delaying it, could not induce reasonable reliance that defendants would forego their rights under the limitation. In this case RSI does allege that some data provided was incomplete, and that RSI was led to believe that full data existed. Nonetheless, the court still finds RSI's purported reliance unreasonable. First, plaintiff does not allege that IBM engaged in any affirmative misconduct or made a misrepresentation. Rather, the complaint alleges only that IBM promised to provide the requested audit information, but did not. Second, IBM's obligation to pay royalties on sales and its obligation to provide audit information upon request are independent requirements of the contract. Even if IBM promised to provide full audit data, RSI cannot reasonably rely on such a promise to forego a suit for royalties on that basis. RSI needs to plead facts showing some misrepresentation or affirmative misconduct on which it relied and which caused it not to file suit.

RSI Corp. v. Int'l Bus. Machs. Corp., No. 5:08-cv-3414, 2009 WL 605837 at *2 (N.D. Cal. Mar. 9, 2009) (citations omitted); see also RSI Corp. v. Int'l Bus. Machs. Corp., No. C-08-3414, 2010 WL 726032 at *2 (N.D. Cal. Feb. 26, 2010) ("Although RSI cites several exchanges between the parties with respect to RSI's unsuccessful requests for audit information, it does not plead facts, as opposed to legal conclusions, sufficient to show that IBM misrepresented its intent or engaged in affirmative misconduct that induced RSI not to file suit.  In fact, RSI pleads that as early as February 2005 IBM had failed to provide audit information as requested.  RSI also does not plead that IBM ever made any representation that it would extend the two-year period for filing suit or forego a limitation defense.").

Because Toto's allegations of Sony's purported audit delay tactics are insufficient as a matter of law to support an equitable estoppel defense to the contractual limitations period, this argument is properly disposed of on this motion to dismiss.  See, e.g., Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006) (equitable estoppel argument is properly resolved on a motion to dismiss where "plaintiff fails to adequately plead the requisite facts in support of the defense").

### 2.     Participation In Settlement Negotiations Is Not A Ground For Invoking Equitable Estoppel

Toto's second argument in support of its equitable estoppel defense alleges that "Sony engaged in behavior which showed it was willing to make a payment to Toto to settle the instant dispute without litigation.  However, that payment was not forthcoming and instead delayed the instant litigation."  (Dkt. No. 20: Am. Compl. ¶ 16.)  Again, accepting the allegations as true, they do not provide a basis for invoking equitable estoppel, as there is no allegation that Toto delayed

its commencement of this suit in reliance on a misrepresentation by Sony, or even that Sony made any misrepresentation at all during the settlement negotiations.  (See Am. Compl. ¶¶ 44-50.) Without more, Toto's allegation that Sony engaged in settlement discussions that were ultimately unsuccessful is not, as a matter of law, sufficient to establish an equitable estoppel defense.  See, e.g., Bulgartabac Holding AD v. Republic of Iraq, 451 F. App'x 9, 11 (2d Cir. 2011) ("[m]ere '[s]ettlement negotiations' or 'allusions to future negotiations . . . are insufficient'" to establish equitable estoppel); Grosz v. Museum of Modern Art, 403 F. App'x 575, 578 (2d Cir. 2010) ("The mere existence of settlement negotiations is insufficient to justify an estoppel claim."), cert. denied, 132 S. Ct. 102 (2011).[21]

Accordingly, Toto's first cause of action,  insofar as it seeks recovery for the Audit Period ending June 30, 2008, is time barred, and there are no facts pled in the amended complaint that would entitle Toto to equitably estop Sony from enforcing the contractual limitations period.[22]

---

[21]   See also, e.g., Mateo v. JetBlue Airways Corp., 847 F. Supp. 2d 383, 388 (E.D.N.Y. 2012); Bulgartabac Holding AD v. Republic of Iraq, 08 Civ. 6502, 2009 WL 3113252 at *10 (S.D.N.Y. Sept. 30, 2009) ("[T]he simple fact that the parties tried to settle the dispute does not create an estoppel; 'equitable estoppel will not be applied "merely on plaintiff's general expectation that the matter would be settled."'"), aff'd, 451 F. App'x 9 (2d Cir. 2011); Columbia Pictures Indus., Inc. v. Persky-Bright Org., 88 Civ. 8130, 89 Civ. 2813, 1993 WL 497845 at *1-2 (S.D.N.Y. Dec. 2, 1993) ("there is no basis to find that the defendants should be estopped from asserting the statute of limitations" where plaintiff's equitable estoppel argument is based on "defendants' conduct in engaging in settlement negotiations over a period of years during which various of plaintiff's claims were becoming time-barred").

[22]   In light of the foregoing, the Court need not address Sony's additional time bar argument based on the Contract's incontestability provision.  (See Dkt. No. 22: Sony Br. at 5 & Att. A: Bars to Recovery for Royalty Periods During Audit Period; see also Dkt. No. 24: Moro Aff. Exs. A & B: 1977 & 1983 Agreements ¶ 11.05.)

**III.    SONY'S MOTION TO DISMISS THAT PORTION OF TOTO'S FIRST CAUSE OF ACTION BASED ON ROYALTY ACCOUNTINGS FOR THE POST-AUDIT PERIOD SHOULD BE DENIED WITH RESPECT TO THE DIGITAL DOWNLOADS ISSUE**

Sony appears to concede that Toto has stated a plausible claim for breach of contract with respect to the digital downloads royalty issue for the Post-Audit Period (periods ending December 31, 2008 and later).  (See Dkt. No. 22: Sony Br. at 25 ("Toto's only factual allegation for the Post-Audit Period relates to its 'digital downloads' claim. . . . Other than the allegation concerning digital downloads, the complaint does not allege any particular breaching conduct, nor any specific royalty provision that [Sony] purportedly breached." (emphasis added)); see also Dkt. No. 26: Toto Opp. Br. at 17 ("While Sony appears to seek that all breach of contract claims be dismissed, the reality is Sony concedes that Toto has stated a claim for Sony's failure to accurately account to and pay Toto for income from Music Download and Mastertone Providers in the periods after the audit."); Dkt. No. 20: Am. Compl. ¶¶ 75, 77.)

This Court agrees that Toto has stated a breach of contract claim for digital downloads for the Post-Audit Period.  Accordingly, Sony's motion to dismiss that portion of Toto's breach of contract claim seeking recovery for the Post-Audit Period (i.e., periods ending December 31, 2008 and later) with respect to digital downloads should be DENIED.  See, e.g., Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, 11 Civ. 1980, 2012 WL 423350 at *3 (S.D.N.Y. Feb. 7, 2012) (Plaintiff's "claim for breach of the [] Agreement ([plaintiff's] first claim for relief) is dismissed insofar as it[] relates to royalties for the accounting period ending June 30th, 2009 or earlier.  Claims with respect to accounting and royalties postdating this period may proceed."); see also Mahoney v. Sony Music Entm't, 12 Civ. 5045, Dkt. No. 10: 8/13/12 Order ¶ 1

(S.D.N.Y. Aug. 13, 2012) (Kaplan, D.J.) (dismissing only the time barred portion of plaintiff's breach of contract claim); <u>Toto, Inc.</u> v. <u>Sony Music Entm't</u>, 12 Civ. 1434, 2012 WL 1416884 at *2 (S.D.N.Y. Apr. 23, 2012) (Kaplan, D.J.) ("[T]he Court cannot now dismiss the claim that Sony breached the contract by failing to pay royalties for music downloads . . . .").[23/]

## IV.   TOTO'S SECOND CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED

In New York, it is well-settled that the common law duty of good faith and fair dealing exists solely as an implicit contractual right; any breach of this duty is therefore considered a breach of the underlying contract.  <u>E.g.</u>, <u>Harris</u> v. <u>Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 83 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach

---

[23/]   To the extent Toto's breach of contract cause of action for the Post-Audit Period intended to state a claim based on allegations unrelated to the digital downloads issue, the amended complaint fails to make out a plausible entitlement to relief.  While Toto alleges specific examples of Sony's breaches during the Audit Period, Toto's only Post-Audit Period allegation beyond the digital download issue is that, "[u]pon information and belief, Sony's failure to properly account to and pay Toto continues in the royalty periods following the Audit which has and will continue to result in additional monetary damages not yet known to Toto." (Am. Compl. ¶ 77.)  This vague allegation is not sufficient for "the court to infer more than the mere possibility of misconduct." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009); <u>see also</u> <u>Valentini</u> v. <u>Citigroup, Inc.</u>, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) ("Vague and conclusory allegations of this kind are insufficient to make out a claim for breach of contract that can survive a motion to dismiss."); <u>Fink</u> v. <u>Time Warner Cable</u>, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011) ("This simple characterization of the nature of the promise, and the equally simplistic allegation that Defendant failed to perform, are insufficient to make the requisite plausible factual demonstration of the basis of Plaintiffs' claim.").  While in different circumstances it might be appropriate to grant Toto an opportunity to correct this deficiency, <u>e.g.</u>, <u>Valentini</u> v. <u>Citigroup, Inc.</u>, 837 F. Supp. 2d at 327, leave to amend is not warranted here.  Sony's Rule 12(c) motion put Toto on notice of this pleading deficiency before Toto amended its complaint (Dkt. No. 14: 5/22/12 Sony Br. at 11-12), and Toto knew that Judge Kaplan had informed the parties "that this amended pleading [would be] the last amended pleading" (Dkt. No. 23: Sperling Aff. Ex. C: 5/24/12 Tel. Conf. Tr. 4, 8-9), yet Toto nevertheless chose not to correct the deficiency.

of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").[24]  "If the allegations underlying the breach of the implied covenant of good faith claim and the breach of contract claim are the same, then the good faith claim is 'redundant' and cannot survive a motion to dismiss."  Simon v. Unum Grp., 2008 WL 2477471 at *2.[25]  "Such a claim may be brought, if at all, only if it is based on allegations different than those

---

[24]  See, e.g., Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992); Boart Longyear Ltd. v. Alliance Indus., Inc., 12 Civ. 1346, --- F. Supp. 2d ----, 2012 WL 2357197 at *7 (S.D.N.Y. July 26, 2012); Banus v. Citigroup Global Mkts., Inc., 757 F. Supp. 2d 394, 402 n.53 (S.D.N.Y. 2010) (Kaplan, D.J.); RSI Corp. v. Int'l Bus. Machs. Corp., No. 5:08-cv-3414, 2009 WL 605837 at *5 (N.D. Cal. Mar. 9, 2009) (Plaintiff's "allegation of a breach of the obligation of good faith is duplicative of the cause of action for breach of contract because New York courts generally assume an obligation of good faith and fair dealing between parties to a contract."); Simon v. Unum Grp., 07 Civ. 11426, 2008 WL 2477471 at *2 (S.D.N.Y. June 19, 2008); Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp., 06 Civ. 3157, 2007 WL 2244062 at *6 (S.D.N.Y. July 31, 2007); Sea Carriers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d 375, 380 (S.D.N.Y. 2007); Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("New York law does not recognize a separate cause of action for breach of the covenant of good faith and fair dealing."), aff'd, 65 F. App'x 736 (2d Cir. 2003); Butvin v. DoubleClick, Inc., 99 Civ. 4727, 2001 WL 228121 at *8 (S.D.N.Y. Mar. 7, 2001), aff'd, 22 F. App'x 57 (2d Cir. 2001).

[25]  See also, e.g., Boart Longyear Ltd. v. Alliance Indus., Inc., 2012 WL 2357197 at *7; Toto, Inc. v. Sony Music Entm't, 12 Civ. 1434, 2012 WL 1416884 at *3 (S.D.N.Y. Apr. 23, 2012) (Kaplan, D.J.) ("'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing . . . .'  To that extent, the second claim is duplicative and must be dismissed."); Prime Mover Capital Partners, L.P. v. Elixir Gaming Techs., Inc., 793 F. Supp. 2d 651, 675 n.122 (S.D.N.Y. 2011) (Kaplan, D.J.); Youngbloods v. BMG Music, 07 Civ. 2394, 2008 WL 919617 at *1 (S.D.N.Y. Mar. 28, 2008); Sea Carriers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d at 380; ARI & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003); TVT Records v. Island Def Jam Music Grp., 244 F. Supp. 2d 263, 277 (S.D.N.Y. 2003); Cary Oil Co. v. MG Ref. & Mktg., Inc., 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000) (Kaplan, D.J.); EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist., 124 F. Supp. 2d 861, 873 (S.D.N.Y. 2000); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y.1997) (Kaplan, D.J.).

underlying the accompanying breach of contract claim." EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist., 124 F. Supp. 2d at 873.[26/]  New York courts do, however, recognize a separate cause of action for breaches of the covenant of good faith and fair dealing "in cases involving efforts by one party to a contract to subvert the contract itself."  Butvin v. DoubleClick, Inc., 2001 WL 228121 at *8.[27/]

> "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim." ARI & Co. v. Regent Int'l Corp., 273 F. Supp. 2d at 522 (citation omitted).[28/]

---

[26/]    Accord, e.g., Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (Chin, D.J.) (citing Harris v. Provident Life & Accident Ins. Co., 310 F.3d at 80); Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 272 (S.D.N.Y. 2008) (Peck, M.J.); Grand Heritage Mgmt., LLC v. Murphy, 06 Civ. 5977, 2007 WL 3355380 at *6 (S.D.N.Y. Nov. 7, 2007); Net2Globe Int'l, Inc. v. Time Warner Telecom, 273 F. Supp. 2d 436, 467 (S.D.N.Y. 2003); TVT Records v. Island Def Jam Music Grp., 244 F. Supp. 2d at 278; Siradas v. Chase Lincoln First Bank, N.A., 98 Civ. 4028, 1999 WL 787658 at *6 (S.D.N.Y. Sept. 30, 1999).

[27/]    See also, e.g., Kermanshah v. Kermanshah, 580 F. Supp. 2d at 272; MacPhee v. Verizon Commc'ns Inc., 06 Civ. 7870, 2008 WL 162899 at *6 (S.D.N.Y. Jan. 15, 2008); AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., 02 Civ. 1363, 2003 WL 21203503 at *9 (S.D.N.Y. May 22, 2003).

[28/]    See also, e.g., Margel v. E.G.L. Gem Lab Ltd., 04 Civ. 1514, 2010 WL 445192 at *9 (S.D.N.Y. Feb. 8, 2010) (dismissing cause of action as duplicative where "there are no damages alleged in connection with the claim alleging a breach of the covenant of good faith and fair dealing that are distinct from the damages suffered as a result of the alleged breach of contract"); Goldblatt v. Englander Commc'ns, L.L.C., 06 Civ. 3208, 2007 WL 148699 at *5 (S.D.N.Y. Jan. 22, 2007); Kosher Provisions, Inc. v. Blue & White Food Prods. Corp., No. CV-04-361, 2005 WL 1890039 at *3 (E.D.N.Y. Aug. 9, 2005); Bates Adver. USA, Inc. v. McGregor, 282 F. Supp. 2d 209, 219 (S.D.N.Y. 2003); Alter v. Bogoricin, 97 Civ. 0662, 1997 WL 691332 at *8 (S.D.N.Y. Nov. 6, 1997).

Toto's claim for breach of the good faith and fair dealing covenant rests on the same facts that comprise the basis for Toto's breach of contract claim. (Compare, e.g., Dkt. No. 20: Am. Compl. ¶ 82 (alleging breach of contract based on Sony's failure "to allow Toto to conduct an audit within thirty (30) days of Toto sending Sony an audit notice" and "to allow Toto a full and fair opportunity to conduct an audit"), with id. ¶ 89 (alleging breach of good faith and fair dealing covenant based on claim that "Sony purposefully delayed Toto's right to conduct a timely, full, fair, and accurate audit" and Sony's failure "to allow Toto to conduct an audit within thirty (30) days of Toto giving Sony its audit notice").)  Likewise, the relief Toto seeks on the covenant claim is indistinguishable from the relief it seeks on the breach of contract claim. (Compare Am. Compl. ¶¶ 82-85, with Am. Compl. ¶¶ 89-90.)  As pled, therefore, the covenant of good faith and fair dealing claim does not state a distinct cause of action based on a separate set of facts and is not independent from Toto's breach of contract claim.

Toto attempts to avoid dismissal of its claim for breach of the covenant of good faith and fair dealing by pleading it in the alternative in its amended complaint. (See Am. Compl. at 20 ("Claim II: Alternatively"); id. ¶ 89 ("To the extent the Court finds any of Toto's breach of contract claims are barred by a limitations period, . . . [Sony] breached its duty of good faith and fair dealing" by, for example, delaying the audit.).)  Dismissal based on the covenant claim's duplicity, however, cannot be avoided on this basis.  See, e.g., Boart Longyear Ltd. v. Alliance Indus., Inc., 2012 WL 2357197 at *8 ("While I have previously held that a duplicative implied covenant of good faith and

fair dealing claim may stand as an alternative cause of action, more recent Second Circuit case law indicates that dismissal for redundancy is the appropriate outcome here." (fn. omitted)).[29]

In opposition to this motion, Toto cites a series of cases in which "New York courts held that under the terms of a contract, arbitrary actions were impermissible and actionable" as breaches of the implied covenant of good faith and fair dealing.  (Dkt. No. 26: Toto Opp. Br. at 19; see also 10/25/12 Busch Letter at 2.)  Toto argues that its claim for breach of the implied covenant of good faith and fair dealing should not be dismissed because it is based on allegations that Sony's accounting and auditing procedures are arbitrary.  (See Toto Opp. Br. at 19-24; 10/25/12 Busch Letter at 2.)

Toto's argument, again, misses the point: Toto's implied covenant of good faith and fair dealing claim should be dismissed not because it is based on inactionable conduct (the Court makes no holding in that regard), but because it is duplicative of the breach of contract claim.  The cases Toto relies upon hold simply that the arbitrary conduct alleged in those cases adequately stated claims for breach of the covenant of good faith and fair dealing, but they do not hold that the

---

29/    See also, e.g., Spread Enters., Inc. v. First Data Merch. Servs. Corp., No. 11-CV-4743, 2012
WL 3679319 at *5 (E.D.N.Y. Aug. 22, 2012) ("While in most cases, a plaintiff may plead
even inconsistent claims pursuant to Fed. R. Civ. 8(d), in the context of a claim for breach
of the covenant of good faith and fair dealing, 'claims are not "in the alternative" when they
are based on the exact same allegations.'"); Gray v. Toyota Motor Sales, U.S.A., Inc., 806
F. Supp. 2d 619, 624 (E.D.N.Y. 2011) ("Plaintiffs' claim that Defendant breached the
implied covenant of good faith and fair dealing is duplicative of their breach of contract
claim and must be dismissed.  Plaintiffs' argument that this claim is merely an alternative
theory of their case is unavailing; the claims are not 'in the alternative' when they are based
on the exact same allegations.  Rather, as Defendant notes, Plaintiffs' claims are redundant
and the implied covenant claim must fail.  This is true even though the Court has already
dismissed the breach of contract claim." (citation omitted)).

presence of such allegations justifies maintaining two separate causes of action.  Indeed, the New

York Court of Appeals made this point clear in one of the cases heavily relied upon by Toto:

> The central question before us is whether plaintiffs have sufficiently pleaded a cause of action for underline breach of contract.  We conclude that they have.
>
> . . . .
>
> By spelling out the basis for their claim that the sponsor _failed to exercise good faith and deal fairly_ in fulfilling the terms and promises contemplated by the offering plan, plaintiffs pleaded _a valid cause of action for breach of contract_.

511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 150, 154, 746 N.Y.S.2d 131,

133, 136 (2002) (emphasis added).[30/]

The Contract requires Sony to account for and pay royalties to Toto, and permits Toto

to audit those royalty statements.  This Court does not dispute that under New York law, the implied

covenant of good faith and fair dealing requires Sony to discharge those contractual duties in good

faith, and that a failure to do so under certain properly pleaded circumstances could be actionable

on a claim for breach of contract.  Toto, however, is not entitled to maintain a separate cause of

action for breach of the covenant of good faith and fair dealing and, therefore, this claim should be

dismissed as redundant.  See, e.g., Franconero v. Universal Music Corp., 02 Civ. 1963, 2003 WL

---

[30/]    The other applicable cases Toto relies upon (Toto Opp. Br. at 19-20; 10/25/12 Busch Letter at 2), reach the same holding.  See Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 393, 639 N.Y.S.2d 977, 981 (1995) (Defendant "failed to comply in good faith with its own test security procedures, thereby breaching its contract with" plaintiff. (emphasis added)); AFBT-II, LLC v. Country Vill. on Mooney Pond, Inc., 305 A.D.2d 340, 340, 342, 759 N.Y.S.2d 149, 150, 151 (2d Dep't 2003) (implied covenant of good faith and fair dealing "includes a promise not to act arbitrarily," thus an issue of fact as to whether defendant acted arbitrarily would preclude summary judgment in an action "to recover damages for breach of contract" (emphasis added)).

22990060 at *3 (S.D.N.Y. Dec. 19, 2003) ("If [defendant] did not have that right, a breach of contract claim will lie, which would foreclose any claim for breach of implied covenants.").

Finally, Toto cannot use the implied covenant of good faith and fair dealing to circumvent the Contract's clear time bar to Toto's Audit Period breach of contract claims. See, e.g., Deutsche Bank AG v. Ambac Credit Prods., LLC, 04 Civ. 5594, 2006 WL 1867497 at *16 (S.D.N.Y. July 6, 2006) ("In other words, if a contractual term applies, a plaintiff cannot replace a failure to show a breach of contract by referring to the implied covenant."). Toto already attempted to save its time barred contract claims by arguing that Sony's "fail[ure] to allow Toto the opportunity to conduct a full, fair, accurate and timely audit" justified application of the equitable estoppel doctrine. (Am. Compl. ¶ 82.) As discussed above, Toto's allegations of Sony's audit-delay tactics are insufficient to invoke equitable estoppel. (See pages 23-25 above.) Accordingly, Toto's attempt to avoid the Contract's time bar by asserting these same audit-delay allegations under the guise of an implied covenant claim is unavailing. See, e.g., Callahan v. Credit Suisse (USA), Inc., 10 Civ. 4599, 2011 WL 4001001 at *7 (S.D.N.Y. Aug. 18, 2011) (allegation that defendant "engaged in 'dilatory tactics'" in an effort "to delay Plaintiff's filing of suit" was insufficient to warrant equitable estoppel as to both the breach of contract and duplicative breach of covenant claims); DeCarlo v. Archie Comic Publ'ns, Inc., 127 F. Supp. 2d 497, 509 n.63 (S.D.N.Y.) (Kaplan, D.J.) ("Because the covenant of good faith and fair dealing stems from the contractual relationship, it is subsumed in the breach of contract claim for purposes of the equitable estoppel defense."), aff'd, 11 F. App'x 26 (2d Cir.), cert. denied, 534 U.S. 1056, 122 S. Ct. 647 (2001).

## CONCLUSION

For the reasons set forth above, Sony's motion to dismiss Toto's amended complaint (Dkt. No. 20), should be <u>GRANTED</u> with respect to that portion of the first cause of action seeking recovery for the periods ending June 30, 2008 and earlier, <u>DENIED</u> with respect to that portion of the first cause of action seeking recovery for digital download royalties for the periods ending December 31, 2008 and later, and <u>GRANTED</u> with respect to the second cause of action for breach of the implied covenant of good faith and fair dealing.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Ingram</u> v. <u>Herrick</u>, 475 F. App'x 793, 793 (2d Cir. 2012); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir.

1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated:      New York, New York
            December 11, 2012

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:    Richard S. Busch, Esq.
                    Jonathan M. Sperling, Esq.
                    Judge Lewis A. Kaplan